UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

BRUCE CRAIGIE and
BARBARA CRAIGIE,

    Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC,
a limited liability company, and
JOHN DOES 1-5, unnamed individuals,

    Defendants.

Case No.  1:15-cv-441

Hon.

Theodore J. Westbrook (P70834)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiffs
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300

## COMPLAINT AND JURY DEMAND

Plaintiffs Bruce Craigie and Barbara Craigie, by and through their attorneys, Drew, Cooper & Anding, P.C., for their complaint against Defendants Nationstar Mortgage LLC and John Does 1-5, state as follows:

### INTRODUCTION

1.    This is an action for damages brought by consumers against a mortgage servicer which is also a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. Section 1692 *et seq.*; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. Section 2605; the Michigan Occupational Code ("MOC"), Mich. Comp. Laws Section 339.901

*et seq.*; and the Michigan Regulation of Collection Practices Act ("MRCPA"), Mich. Comp. Laws Section 445.251 *et seq.*, in connection with the servicing of the mortgage loan on Plaintiffs' primary residence.

2.   This action resulted from Defendants' reckless and/or knowing use of unlawful debt collection practices; their failure to conduct themselves in accordance with RESPA and its implementing regulations; its unlicensed and unlawful collection activity under the MOC; and its unlawful collection activity under the MRCPA regarding the servicing of Plaintiffs' home mortgage loan, wrongfully causing Plaintiffs to lose their home to foreclosure, wrongfully causing the redemption period for their home to lapse, and ultimately, wrongfully causing Plaintiffs to be evicted from their home.

## THE PARTIES

3.   Plaintiffs Bruce Craigie ("Bruce") and Barbara Craigie ("Barbara"), husband and wife, are individuals residing at 1625 Lake Drive, East Grand Rapids, Michigan 49506.

4.   Defendant Nationstar Mortgage, LLC ("Nationstar") is a corporation organized under the laws of Delaware with its primary place of business at 2828 North Harwood, Dallas, Texas 75201.  Nationstar conducts business in the state of Michigan using interstate wires and mails and through agents located in the state of Michigan.

5.   Nationstar is a company engaged in interstate commerce using the wires and mails for the principal purpose of collecting debts.  Nationstar is a "debt collector" as that term is defined in the FDCPA and is regulated under the MOC and MRCPA.  Upon information and belief, Nationstar is not licensed to conduct business as a debt collector in the state of Michigan as required by the MOC even though its collection activities are not limited to interstate communications.

6. In Michigan, Nationstar's registered agent is CSC-Lawyers Incorporating Service Company.

7. John Does 1-5 are individuals acting as executives, employees and/or agents of Nationstar with respect to the conduct alleged herein, whose true identities are not yet known to Plaintiffs, and who reside, upon information and belief, in the state of Texas.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 15 U.S.C. Section 1692k(d); 12 U.S.C. Section 2605(f); and 28 U.S.C. Section 1331.

9. This Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. Section 1332 because Plaintiffs are citizens of Michigan, Defendants are citizens of Texas, and the amount in controversy exceeds $75,000.

10. Venue in this district is proper because the events complained of took place here.

## FACTS

11. Plaintiffs purchased their property and home, located at 1625 Lake Drive in East Grand Rapids, Michigan (the "Home"), in September of 2005.  United Bank originated a $188,000 mortgage loan in connection with the purchase.  Both Plaintiffs executed the mortgage and note documents.  Both Plaintiffs were listed as grantees on the warranty deed to the Home and owned the Home as tenants by the entireties.

12. On April 24, 2006, Bruce refinanced the loan, as well as other mortgage loans with respect to other properties owned by Plaintiffs, with First Horizon Home Loan Corporation ("First Horizon"), executing a new note in the amount of $187,500 (the "Loan") and a new mortgage.  As a result, First Horizon paid off the note executed in favor of United Bank, whereby the original mortgage was discharged.

13. The unsigned Loan and mortgage documents prepared in connection with the refinance by First Horizon reflect that Bruce alone was to execute them. Barbara was not present at the April 24, 2006 closing and did not execute either the note or the mortgage.

14. The original form HUD-1 Settlement Statement from the April 24, 2006 refinancing reflects Bruce's signature and the settlement agent's certification and signature, but does not reflect Barbara's signature.

15. Because the mortgage to First Horizon was never signed by Barbara, and because Bruce lacked the legal authority to encumber Barbara's undivided interest in the Home, no valid mortgage in favor of First Horizon ever existed.

16. However, the version of the mortgage documents recorded with the Kent County Register of Deeds on May 22, 2006 had been altered, by someone other than Plaintiffs, to add Barbara's name as well as an unauthorized facsimile signature or forged signature purporting to be Barbara's.

17. Plaintiffs began experiencing financial hardship in 2009 and became delinquent in payments on the Loan.

18. By letter of August 25, 2011, Nationstar informed Bruce that the servicing of the Loan had been "assigned, sold or transferred from FIRST HORIZON HOME LOANS to Nationstar Mortgage LLC, effective 08/15/11."

19. Accompanying the August 25, 2011 letter was a statement and request for payment, indicating that the Loan was in default at the time the servicing of the Loan was assigned to Nationstar, and acknowledging that "Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

20. In September of 2011, Bruce received information from Nationstar indicating that he may be eligible for payment relief under the Making Home Affordable ("MHA") program launched by the U.S. Department of Treasury in early 2009.

21. Plaintiffs sought a mortgage modification from Nationstar, and submitted to Nationstar all of the materials requested by Nationstar in connection with the modification.

22. On January 11, 2012, Nationstar sent an email to Barbara stating that Nationstar was "missing" four types of "required documents" which were needed to process the modification application. Plaintiffs complied.

23. On March 7, 2012, Nationstar sent a letter to Bruce indicating that the requested modification had been denied because "Request incomplete."

24. On May 1, 2012, Trott & Trott sent Bruce a letter indicating that Nationstar had referred the Loan to Trott & Trott for foreclosure and was accelerating the indebtedness on the Loan, in the total claimed amount of $226,723.88. The sheriff's sale was subsequently scheduled for September 19, 2012.

25. On May 4, 2012, Nationstar sent Bruce a letter declaring a default on the Loan as of October 1, 2009 and stating that Bruce had the right to reinstate the loan upon payment of past due amounts, late charges, periodic adjustments and collection costs, in the amount of $57,908.75.

26. On June 19, 2012, Trott & Trott sent a letter on Nationstar's behalf acknowledging Plaintiffs' request to discuss a loan modification and/or loss mitigation options, and requesting extensive financial information from Plaintiffs, all of which had previously been submitted by Plaintiffs to Nationstar. The included correspondence requested such information by August 13, 2012.

27. Upon information and belief, Nationstar opened a new modification "case" on the account in August of 2012.

28. On August 17, 2012, Nationstar, through its agent Trott & Trott, posted on the Home a Notice of Sheriff's Sale, setting a date for a sherriff's sale of the Home of September 19, 2012.

29. On August 31, 2012, Nationstar, through its employee "John Yakoub," emailed to Plaintiffs a list of requested documents in connection with the modification case.

30. On September 18, 2012, and again on September 25, 2012, Nationstar sent to Bruce letters stating that the loan modification documents had been received, that the review process would take between 20 and 60 days and that the Home would not be sold while the modification review was pending

31. Mr. Yakoub at Nationstar confirmed via email on September 19, 2012 that "[e]verything" had been "received and modification in review.  Check with me next week."  That same day, Mr. Yakoub confirmed that "[y]ou're under review for modification; therefore, your sale was denied.  Please do not worry as long as the modification review is in progress."

32. Notwithstanding the September 18, 2012 and September 25, 2012 letters, and the communications from Mr. Yakoub on September 19, 2012, on September 25, 2012 Nationstar sent a letter to Bruce indicating that two "required documents" had not been received.  This letter requested those documents be submitted by October 26, 2012.

33. The sheriff's sale of the Home was postponed by Nationstar and Trott & Trott from September 19, 2012 to October 17, 2012.

34. On October 17, 2012, despite that a modification application was pending and Nationstar had requested that additional documents be received by October 26, 2012, Nationstar

5

through Trott & Trott sold the Home at a sheriff's sale. The October 17, 2012 sheriff's sale was subsequently rescinded by Nationstar.

35. On October 26, 2012, Plaintiffs submitted the remaining two requested documents to Nationstar in connection with the modification case.

36. On November 6, 2012, Nationstar acknowledged via letter its receipt of the required documents, stating that a review of the modification documents would take 20-60 days, and stating that the Home would not be sold during the pendency of the evaluation.

37. On December 12, 2012, Nationstar again sent a letter to Bruce stating that Nationstar was "missing" two other types of "required documents" which were needed to process the modification application. Plaintiffs again complied on January 13, 2013.

38. On December 20, 2012, "Lindsey Hohman" of Nationstar requested additional modification-related documents via email. Plaintiffs again provided the requested information.

39. On January 16, 2013, Ms. Hohman indicated by email that the provided modification-related information needed to be "updated" because it was no longer current, and requested additional documentation. Plaintiffs provided the updated information to Nationstar.

40. In January of 2013 "Chris Granados" of Nationstar became Plaintiffs' new point of contact for the Loan. Mr. Granados requested additional documentation, which Plaintiffs provided on February 8, 2013.

41. No decision regarding this modification application, which was completed no later than February 8, 2013, was ever provided to Plaintiffs.

42. On April 5, 2013, Trott & Trott sent Bruce another letter indicating that Nationstar had referred the Loan to Trott & Trott for foreclosure and was accelerating the indebtedness on the Loan, in the total claimed amount of $247,886.92.

6

43. On May 1, 2013, Trott & Trott sent another letter on Nationstar's behalf acknowledging Plaintiffs' request to discuss a loan modification and/or loss mitigation options, and requesting extensive financial information from Plaintiffs, all of which had previously been submitted by Plaintiffs to Nationstar.

44. On May 4, 2013, Nationstar sent a letter to Bruce containing information about "Making Home Affordable" ("MHA") loan modifications and indicating that such a modification may be available with respect to the Loan.

45. However, at that time Nationstar was acting as subservicer on behalf of First Tennessee Bank with respect to the Loan, and because First Tennessee Bank did not participate in the MHA program, Nationstar was actually unable to offer an MHA modification with respect to the Loan.

46. On May 29, 2013, Nationstar via letter indicated that additional documents were necessary to "evaluate your request for the BoNY Trial Period."

47. On June 29 and June 30, 2013, Plaintiffs sent the requested documents to Nationstar, care of Nationstar employee and new point of contact "Shanta Hunnecook."

48. On July 10, Nationstar, through Trott & Trott, again posted a Notice of Mortgage Foreclosure Sale on the Home, indicating that a sheriff's sale would be held on August 7, 2013.

49. On September 24, 2013, Ms. Hunnecook related to Plaintiffs that the sheriff's sale scheduled for August 7, 2013 had been postponed to November 6, 2013.

50. On October 15, 2013, Nationstar via letter indicated that Nationstar was "unable to grant your request" for a modification, because Plaintiffs purportedly "did not provide us with the documents we requested." Plaintiffs again re-sent the requested information to Nationstar on October 28, 2013.

51. On October 31, 2013, Nationstar via letter indicated that it had "received your documentation for the BoNY [modification] Trial Period" and indicated that "Nationstar Mortgage will now review your information to verify that you are eligible for this program." Nationstar stated that its evaluation would take 20-60 days and that the Home would not be sold during the evaluation period.

52. The same day, Nationstar sent another letter indicating that Nationstar was "missing the following required documents" and required Plaintiffs to send the identified documents by November 29, 2013, care of Nationstar employee and new point of contact "Tashara Goudiaby." Plaintiffs sent the requested documents to Nationstar on November 16 and November 29, 2013.

53. The sheriff's sale was thereafter rescheduled to January 8, 2014.

54. Nationstar sent yet another notice of default letter to Plaintiffs on February 14, 2014.

55. On February 21, 2014, Nationstar once again sent a letter indicating that Nationstar had received Plaintiffs' inquiry regarding a loan modification. Nationstar indicated the required documents should be submitted by March 8, 2014 and that the Home would not be sold while a modification request was being evaluated.

56. On March 7, 2014, Plaintiffs faxed the requested documents to Nationstar.

57. On April 2, 2014, Plaintiffs received a notice from Greenridge Realty stating that the Home had been sold for $269,870.20.

58. Plaintiffs had received no notice of a sheriff's sale to take place on April 2, 2014.

59. Upon information and belief, Bank of New York Mellon, trustee for the holders of the Loan, purchased the Home at the April 2, 2014 sheriff's sale through a credit bid of the amount allegedly owing on the Loan.

60. Plaintiffs received no notice from Nationstar, Bank of New York, Trott & Trott or anyone other than Greenridge Realty that the Home had sold at a sheriff's sale on April 2, 2014.

61. That same day, Barbara spoke to Nationstar employee "Dana" in Loss Mitigation regarding the purported sale of the Home. Dana indicated that Nationstar's file contained conflicting information regarding the sale, and transferred the call to another employee, "Wayne." Wayne indicated that the Home had been sold that day because Nationstar purportedly had not received the information requested by Nationstar in connection with Plaintiffs' modification request.

62. In fact, Nationstar had received the requested information on March 7, 2014 and had not indicated to Plaintiffs that any information was missing.

63. On April 2, 2014, after having spoken with Dana and Wayne of Nationstar, Barbara spoke with "Vicki," an employee of Trott & Trott, who indicated that Nationstar had called on April 2, 2014 to postpone the sheriff's sale, but the sale had already concluded by the time the call was received by Trott & Trott.

64. Later that afternoon, Barbara spoke with "Chuck," a Nationstar employee, who indicated that Nationstar's file stated both that the house had sold, and conversely that the sale was confirmed to have been postponed. Chuck indicated that it was too late to resolve the discrepancy because the foreclosure sale had already been completed.

65. Later that afternoon, "Paris Smith," a Nationstar employee, returned Barbara's call, apologized for the "confusion" regarding the sale, and stated that the sale was to be

9

rescinded. Smith indicated that another Nationstar employee, "Irene Rump," was "handling" the file and that Barbara should not worry.

66. Barbara telephoned Nationstar for a status update on April 4, 2014. Nationstar employee "Kate" in Foreclosure Prevention stated that Nationstar's file indicated Plaintiffs' "claim" had been "escalated" and that Ms. Smith or Ms. Rump would call the following Monday when the issues were "resolved." No Nationstar employee called Plaintiffs the following Monday.

67. Barbara again telephoned Nationstar on April 14, 2014, leaving message for Ms. Smith and Wayne asking for the status of the Home. Barbara called again, reaching employee "Jameeca," who indicated that both Ms. Smith and Ms. Rump were unavailable. Jameeca also indicated that there were no notes in Nationstar's file indicating that anyone in management was working on the file. Nationstar also purported to provide Ms. Rump's direct phone number; when Barbara telephoned that number a recording stated that this was a "nonworking number."

68. The following day, Barbara against left messages on the direct lines of Ms. Smith and Wayne asking for the status. Ms. Smith returned the call and stated that she had confirmation that the sale of the Home was to be rescinded. Ms. Smith indicated that Nationstar's attorneys had made an error. She also indicated that Ms. Rump was handling the file at that time.

69. On April 22, 2014, Barbara telephoned Nationstar again and spoke to employee "Chuck," who indicated that he could not access Nationstar's file for the Loan because it was password protected. Chuck transferred Barbara to Ms. Rump's direct line. There was no answer.

70. On April 24, 2014, Barbara telephoned Ms. Smith at Nationstar for a status update. Ms. Smith again advised Barbara that the sale of the Home was in the process of being rescinded.

71. Later that day, Barbara telephoned Trott & Trott and spoke with employee "Olga," who advised Barbara that the sale could not be rescinded because the sheriff's deed had been recorded on April 9, 2014.

72. Directly following the telephone call with Trott & Trott, Barbara spoke with Ms. Smith, who refused to discuss the Loan or the Home. Barbara was instead transferred to D. Lopez in the Deed in Lieu department, who advised Barbara that Nationstar's file had recently been updated by I. Rump to reflect that due to the "level of delinquency" and "incomplete file" on March 21, Nationstar management was "standing by its decision;" i.e., the sheriff's sale would stand and not be rescinded. D. Lopez purported to give Barbara the direct phone number of Ms. Rump, but this was the same non-working phone number previously provided.

73. Thus, on April 24, 2014, Plaintiffs discovered that numerous representations by Nationstar regarding the status of the foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, had been false, deceptive and misleading.

74. On May 1, 2014, Barbara telephoned Nationstar and asked to be transferred to Ms. Rump's direct line. Barbara left a message asking for confirmation of the information received from Nationstar on April 24, 2014. Ms. Rump did not return the phone call.

75. On May 12, 2014, Plaintiffs through their counsel informed Nationstar, through Trott & Trott, that the foreclosure sale had been wrongful and requested that the dispute be resolved via modification of the Loan. Both Trott & Trott and Nationstar, via separate letters,

11

responded that modification documents should be submitted by May 30, 2014 and that Nationstar would investigate and respond by June 13, 2014.

76. On June 24, 2014, Nationstar responded, falsely stating that no error had occurred and that Nationstar's records reflected that the modification package had been incomplete.

77. On July 15, 2014, Nationstar sent a letter to Plaintiffs' counsel indicating that Nationstar had received correspondence forwarded by the Making Home Affordable Help Desk on July 15, 2014 regarding Plaintiffs' concerns with the Loan and the foreclosure sale of the Home. Nationstar stated that it was "in the process of reviewing your concerns" and that "[o]ur goal is to provide the MHA Help Desk with a response no later than August 13, 2014."

78. On August 15, 2014, Barbara again telephoned Nationstar for a status update. Nationstar employee C. Hubbert indicated that Nationstar's position was that the foreclosure sale of the Home would stand and would not be rescinded due to the length of the delinquency. C. Hubbert referred Barbara to another employee, Eric Foreman, to discuss options. Mr. Foreman did not return multiple calls.

79. On August 27, 2014, Barbara again called Nationstar and reported that Mr. Foreman was not returning her calls. The Nationstar employee gave Barbara a new contact number for an employee with the same level of authority as Mr. Foreman. Barbara telephoned the number given and left a voicemail message, which was never returned.

80. On October 2, 2014, the redemption period for the Home elapsed.

81. On December 17, 2014, the purchaser of the Home at the April 2, 2014 sheriff's sale, Bank of New York Mellon, as trustee for the holders of the Loan, sold the Home via online auction for $108,150. Plaintiffs' neighbor, Ryan Dykstra, was the purchaser.

82. Mr. Dykstra subsequently began proceedings to evict Plaintiffs from the Home.

83. On January 23, 2015, Plaintiffs submitted information regarding Nationstar's handling of the Loan to the Consumer Financial Protection Bureau, which referred the information to Nationstar.

84. On March 26, 2015, Plaintiffs through their counsel received a letter from Nationstar, dated March 5, 2015, stating that Nationstar was then "working through a settlement with all parties involved in order to remediate this matter." Nationstar stated that according to its records, an "incomplete" modification application was received on March 8, 2014 but "not uploaded into our system until March 21, 2014. An error occurred prior to the foreclosure sale in that you were not at least verbally notified of the missing documents needed in order to review the account for payment assistance."

85. Thus, on March 26, 2015, Plaintiffs discovered that Nationstar had failed to take timely action to respond to Plaintiffs' request to avoid the foreclosure of the Home through the modification request and information they submitted to Nationstar on March 7, 2014.

86. Plaintiffs are presently under court order to relinquish possession of the Home.

87. As a result of the wrongful sheriff's sale of the Home, and Nationstar's wrongful conduct in connection with its servicing of the Loan, Plaintiffs have lost ownership of their residence as well as all equity they had in the Home. Moreover, because Nationstar continued to promise that the sale would be or could be rescinded following the April 2, 2014 sale, the redemption period has now elapsed and the property cannot be redeemed.

## **COUNT I – FAIR DEBT COLLECTION PRACTICES ACT**

88. The foregoing paragraphs are incorporated herein by reference.

89. Nationstar's statements regarding the status of the foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, constituted "communications" as the term is defined in the FDCPA, MOC and MRCPA.

90. Nationstar's statements regarding the status of the foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, constituted false representations regarding the character, amount, or legal status of a debt, in violation of 15 U.S.C. Section 1692e.

91. Nationstar's statements regarding the status of the foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, *inter alia*, constituted deceptive, unconscionable and unfair means of collecting or attempting to collect a debt, in violation of 15 U.S.C. Section 1692f.

92. Nationstar's sale of the Home on April 2, 2014, despite the pendency of a complete modification application submitted on or before March 8, 2014, and its failure to rescind the April 2, 2014 foreclosure sale after its repeated promises to do so constituted deceptive, unconscionable and unfair means of collecting or attempting to collect a debt.

93. The mortgage purportedly given by Bruce in favor of First Horizon on April 24, 2006 was never signed by Barbara. Barbara's undivided interest in the Home was thus not subject to a valid mortgage and could not be extinguished via foreclosure.

94. Nationstar's sale of the Home on April 2, 2014, and its subsequent failure to rescind the sale despite its promises to do so, thus constituted taking nonjudicial action to effect dispossession of property where there was no present right to possession of the property claimed as collateral through an enforceable security interest, in violation of 15 U.S.C. Section 1692f.

95. As an actual and proximate result of the acts and omissions of Nationstar in violation of the FDCPA, Plaintiffs have suffered actual damages and injury, including but not limited to monetary loss, fear, stress, mental anguish, emotional stress, anxiety, loss of sleep, and suffering, for which they should be compensated in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a. Actual and statutory damages pursuant to 15 U.S.C. Section 1692k(a);

    b. Costs and reasonable attorney fees pursuant to 15 U.S.C. Section 1692k(a)(3); and

    c. Such further relief as the Court deems just and proper.

### COUNT II – RESPA

96. The foregoing paragraphs are incorporated herein by reference.

97. The Loan is a "federally related mortgage" loan as that term is used in 12 U.S.C. Section 2605(k)(1) because it is secured by a first lien on residential real property designed principally for the occupancy of one family; and it is made in whole or in party by a creditor which makes or invests in residential real estate loans aggregating more than $1,000,000 per year.

98. Nationstar violated 12 U.S.C. Section 2605(k)(1)(C) by failing to take timely action to respond to Plaintiffs' requests in connection with avoiding the foreclosure sale of the Home.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a. Actual damages pursuant to 12 U.S.C. Section 2605(f)(1)(A);

    b. Additional damages due to Nationstar's pattern or practice of noncompliance, pursuant to 12 U.S.C. Section 2605(f)(1)(B); and

    c. Reasonable attorney fees and court costs pursuant to 12 U.S.C. Section 2605(f)(3).

## COUNT III – MICHIGAN OCCUPATIONAL CODE

99. The foregoing paragraphs are incorporated herein by reference.

100. Nationstar acted as a debt collector in the State of Michigan without being licensed as required by Mich. Comp. Laws Section 339.904.

101. Nationstar's actions to collect a debt from Plaintiffs, including its false, misleading, and deceptive communications to Plaintiffs and its utilization of unconscionable and deceptive means of collecting a debt from Plaintiffs, violated Mich. Comp. Laws Section 339.904(1) and caused actual damages to Plaintiffs.

102. Alternatively, if Nationstar was a licensed debt collector pursuant to Mich. Comp. Laws Section 339.904, Nationstar's actions to collect a debt from Plaintiffs, including its false, misleading, and deceptive communications to Plaintiffs and its utilization of unconscionable and deceptive means of collecting a debt from Plaintiffs, violated Mich. Comp. Laws Section 339.915.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a. Statutory damages and treble actual damages pursuant to Mich. Comp. Laws Section 339.916; and

    b. Reasonable attorney fees and court costs pursuant to Mich. Comp. Laws Section 339.916(2).

## **COUNT IV – MICHIGAN REGULATION OF COLLECTION PRACTICES ACT**

103. The foregoing paragraphs are incorporated herein by reference.

104. Nationstar is a regulated entity under the MRCPA, Mich. Comp. Laws Section 445.251.

105. Nationstar's actions to collect a debt from Plaintiffs, including its false, misleading, and deceptive communications to Plaintiffs and its utilization of unconscionable and deceptive means of collecting a debt from Plaintiffs, violated Mich. Comp. Laws Section 445.252.

106. Nationstar's violation of the MRCPA was willful.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

a. Statutory damages and treble actual damages pursuant to Mich. Comp. Laws Section 445.257; and

b. Reasonable attorney fees and court costs pursuant to Mich. Comp. Laws Section 445.257.

Respectfully submitted,

Dated:  April 24, 2015

/s/Theodore J. Westbrook
Theodore J. Westbrook (P70834)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiffs
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300
twestbrook@dca-lawyers.com
anarvaes@dca-lawyers.com

## JURY DEMAND

Plaintiffs Bruce Craigie and Barbara Craigie hereby demand trial by jury as to any and all claims and issues so triable.

Dated:  April 24, 2015

/s/Theodore J. Westbrook
Theodore J. Westbrook (P70834)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiffs
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300
twestbrook@dca-lawyers.com
anarvaes@dca-lawyers.com

I:\JEATeam\3378-01\PLEADINGS\1625 Lake Complaint.docx