UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

---

BRUCE CRAIGIE and
BARBARA CRAIGIE,

Case No.  1:15-cv-441

Plaintiffs,

Hon. Janet T. Neff

v.

NATIONSTAR MORTGAGE, LLC,
a limited liability company, and
JOHN DOES 1-5, unnamed individuals,

Defendants.

---

Theodore J. Westbrook (P70834)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiffs
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300

---

## **FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiffs Bruce Craigie and Barbara Craigie, by and through their attorneys, Drew, Cooper & Anding, P.C., for their complaint against Defendants Nationstar Mortgage LLC and John Does 1-5, state as follows:

### **INTRODUCTION**

1.     This is an action for damages brought by consumers against a mortgage servicer which is also a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. Section 1692 *et seq.*; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. Section 2605; the Michigan Occupational Code ("MOC"), Mich. Comp. Laws Section 339.901

*et seq.*; and the Michigan Regulation of Collection Practices Act ("MRCPA"), Mich. Comp. Laws Section 445.251 *et seq.*, in connection with the servicing of the mortgage loan on two homes owned by Plaintiffs.

2.     This action resulted from Defendants' reckless and/or knowing use of unlawful debt collection practices; their failure to conduct themselves in accordance with RESPA and its implementing regulations; their unlicensed and unlawful collection activity under the MOC; and their unlawful collection activity under the MRCPA regarding the servicing of Plaintiffs' mortgage loans, wrongfully causing Plaintiffs to lose their homes to foreclosure, wrongfully causing the redemption period for their primary residence to lapse, wrongfully causing Plaintiffs to be evicted from their primary residence, and wrongfully requiring Plaintiffs to defend their property rights via litigation.

## THE PARTIES

3.     Plaintiffs Bruce Craigie ("Bruce") and Barbara Craigie ("Barbara"), husband and wife, are individuals residing at 1625 Lake Drive, East Grand Rapids, Michigan 49506.

4.     Defendant Nationstar Mortgage, LLC ("Nationstar") is a corporation organized under the laws of Delaware with its primary place of business at 2828 North Harwood, Dallas, Texas 75201.  Nationstar conducts business in the state of Michigan using interstate wires and mails and through agents located in the state of Michigan.

5.     Nationstar is a company engaged in interstate commerce using the wires and mails for the principal purpose of collecting debts.  Nationstar is a "debt collector" as that term is defined in the FDCPA and is regulated under the MOC and MRCPA.  Upon information and belief, Nationstar is not licensed to conduct business as a debt collector in the state of Michigan

1

as required by the MOC even though its collection activities are not limited to interstate communications.

6.      In Michigan, Nationstar's registered agent is CSC-Lawyers Incorporating Service Company.

7.      John Does 1-5 are individuals acting as executives, employees and/or agents of Nationstar with respect to the conduct alleged herein, whose true identities are not yet known to Plaintiffs, and who reside, upon information and belief, in the state of Texas.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction pursuant to 15 U.S.C. Section 1692k(d); 12 U.S.C. Section 2605(f); and 28 U.S.C. Section 1331.

9.      This Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. Section 1332 because Plaintiffs are citizens of Michigan, Defendants are citizens of Texas, and the amount in controversy exceeds $75,000.

10.     Venue in this district is proper because the events complained of took place here.

## FACTS

**First Horizon Obtains Forged Mortgages on Plaintiffs' Homes.**

11.     Plaintiffs purchased their primary residence and home, located at 1625 Lake Drive in East Grand Rapids, Michigan ("Lake Drive"), in September of 2005.  United Bank originated a $188,000 mortgage loan in connection with the purchase.  Both Plaintiffs executed the mortgage and note documents.  Both Plaintiffs were listed as grantees on the warranty deed to Lake Drive and owned Lake Drive as tenants by the entireties.

12.     Plaintiffs purchased another property and home, located at 2985 Scenic Drive, Fruitland Township, Michigan, on September 30, 2005 ("Scenic Drive").  In connection with the

purchase, both Plaintiffs executed land contract and mortgage documents in favor of United Bank.  When Plaintiffs obtained the deed to Scenic Drive, both were listed as grantees on the warranty deed and owned Scenic Drive as tenants by the entireties.

13.     In April of 2006, Bruce refinanced the loan and land contract indebtedness for both Lake Drive and the Scenic Drive with First Horizon Home Loan Corporation ("First Horizon"), executing a new note in the amount of $417,000 for Scenic Drive ("Scenic Drive Loan") and a new mortgage on Scenic Drive ("Scenic Drive Mortgage") on April 18, 2006; and a new note in the amount of $187,500 for Lake Drive (the "Lake Drive Loan") and a new mortgage on Lake Drive ("Lake Drive Mortgage") on April 24, 2006.  As a result, the original mortgages in favor of United Bank were discharged.

14.     The unsigned loan and mortgage documents prepared in connection with the refinancing of both loans by First Horizon reflect that Bruce alone was to execute them.  Barbara was not present at either the April 18, 2006 closing or the April 24, 2006 closing and did not execute any of the documents.  She was not asked to, and did not, sign any note or mortgage documents with respect to Scenic Drive or Lake Drive in 2006 or any time thereafter.

15.     The original form HUD-1 Settlement Statement from the April 18, 2006 refinancing of Scenic Drive reflects Bruce's signature and the settlement agent's certification and signature, but does not reflect Barbara's signature or any place for Barbara to sign.

16.     The original form HUD-1 Settlement Statement from the April 24, 2006 refinancing of Lake Drive reflects Bruce's signature and the settlement agent's certification and signature, but does not reflect Barbara's signature or any place for Barbara to sign.

17.     Because the mortgages to First Horizon were never signed by Barbara, and because Bruce lacked the legal authority to encumber Barbara's undivided interest in Scenic

Drive and Lake Drive, no valid mortgage in favor of First Horizon ever existed as to Scenic Drive or Lake Drive.

18.     However, the versions of the mortgage documents recorded with the Kent County and Muskegon County registers of deeds on May 22, 2006 had been altered, by someone other than Plaintiffs, to add Barbara's name as well as an unauthorized facsimile signature or forged signature purporting to be Barbara's.  Thus, the recorded versions of the Scenic Drive Mortgage and Lake Drive Mortgage had been forged.

19.     Plaintiffs began experiencing financial hardship in 2009 and eventually became delinquent in payments on the Scenic Drive Loan and the Lake Drive Loan.

20.     By letter of July 27, 2011, First Horizon informed Bruce that the servicing of the Scenic Drive Loan was being transferred to Nationstar as of August 16, 2011.

21.     By letter of August 25, 2011, Nationstar informed Bruce that the servicing of the Lake Drive Loan had been "assigned, sold or transferred from FIRST HORIZON HOME LOANS to Nationstar Mortgage LLC, effective 08/15/11."   A similar letter was sent by Nationstar to Bruce regarding the Scenic Drive Loan on the same date.

22.     Accompanying the August 25, 2011 letters were statements and requests for payment, indicating that the loans were in default at the time the servicing of the loans was assigned to Nationstar, and acknowledging that "Nationstar is a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose."

**Nationstar's Misconduct Regarding the Lake Drive Loan**

23.     In September of 2011, Bruce received information from Nationstar regarding the Lake Drive Loan indicating that he may be eligible for payment relief under the Making Home Affordable ("MHA") program launched by the U.S. Department of Treasury in early 2009.

24.     Plaintiffs sought a mortgage modification from Nationstar, and submitted to Nationstar all of the materials requested by Nationstar in connection with the modification.

25.     On January 11, 2012, Nationstar sent an email to Barbara stating that Nationstar was "missing" four types of "required documents" which were needed to process the modification application.  Plaintiffs complied.

26.     On March 7, 2012, Nationstar sent a letter to Bruce indicating that the requested modification had been denied because "Request incomplete."

27.     On May 1, 2012, Trott & Trott sent Bruce a letter indicating that Nationstar had referred the Lake Drive Loan to Trott & Trott for foreclosure and was accelerating the indebtedness on the Loan, in the total claimed amount of $226,723.88.  The sheriff's sale was subsequently scheduled for September 19, 2012.

28.     On May 4, 2012, Nationstar sent Bruce a letter declaring a default on the Lake Drive Loan as of October 1, 2009 and stating that Bruce had the right to reinstate the loan upon payment of past due amounts, late charges, periodic adjustments and collection costs, in the amount of $57,908.75.

29.     On June 19, 2012, Trott & Trott sent a letter on Nationstar's behalf acknowledging Plaintiffs' request to discuss a loan modification and/or loss mitigation options, and requesting extensive financial information from Plaintiffs, all of which had previously been submitted by Plaintiffs to Nationstar.  The included correspondence requested such information by August 13, 2012.

30.     Upon information and belief, Nationstar opened a new modification "case" on the account in August of 2012.

31.    On August 17, 2012, Nationstar, through its agent Trott & Trott, posted on Lake Drive a Notice of Sheriff's Sale, setting a date for a sheriff's sale of September 19, 2012.

32.    On August 31, 2012, Nationstar, through its employee "John Yakoub," emailed to Plaintiffs a list of requested documents in connection with the modification case.

33.    On September 18, 2012, and again on September 25, 2012, Nationstar sent to Bruce letters stating that the loan modification documents had been received, that the review process would take between 20 and 60 days and that Lake Drive would not be sold while the modification review was pending.

34.    Mr. Yakoub at Nationstar confirmed via email on September 19, 2012 that "[e]verything" had been "received and modification in review.  Check with me next week."  That same day, Mr. Yakoub confirmed that "[y]ou're under review for modification; therefore, your sale was denied.  Please do not worry as long as the modification review is in progress."

35.    Notwithstanding the September 18, 2012 and September 25, 2012 letters, and the communications from Mr. Yakoub on September 19, 2012, on September 25, 2012 Nationstar sent a letter to Bruce indicating that two "required documents" had not been received.  This letter requested those documents be submitted by October 26, 2012.

36.    The sheriff's sale of Lake Drive was postponed by Nationstar and Trott & Trott from September 19, 2012 to October 17, 2012.

37.    On October 17, 2012, despite that a modification application was pending and Nationstar had requested that additional documents be received by October 26, 2012, Nationstar through Trott & Trott sold Lake Drive at a sheriff's sale.  The October 17, 2012 sheriff's sale was subsequently rescinded by Nationstar.

38.     On October 26, 2012, Plaintiffs submitted the remaining two requested documents to Nationstar in connection with the modification case.

39.     On November 6, 2012, Nationstar acknowledged via letter its receipt of the required documents, stating that a review of the modification documents would take 20-60 days, and stating that the Home would not be sold during the pendency of the evaluation.

40.     On December 12, 2012, Nationstar again sent a letter to Bruce stating that Nationstar was "missing" two other types of "required documents" which were needed to process the modification application.  Plaintiffs again complied on January 13, 2013.

41.     On December 20, 2012, "Lindsey Hohman" of Nationstar requested additional modification-related documents via email.  Plaintiffs again provided the requested information.

42.     On January 16, 2013, Ms. Hohman indicated by email that the provided modification-related information needed to be "updated" because it was no longer current, and requested additional documentation.  Plaintiffs provided the updated information to Nationstar.

43.     In January of 2013 "Chris Granados" of Nationstar became Plaintiffs' new point of contact for the Lake Drive Loan.  Mr. Granados requested additional documentation, which Plaintiffs provided on February 8, 2013.

44.     No decision regarding this modification application, which was completed no later than February 8, 2013, was ever provided to Plaintiffs.

45.     On April 5, 2013, Trott & Trott sent Bruce another letter indicating that Nationstar had referred the Lake Drive Loan to Trott & Trott for foreclosure and was accelerating the indebtedness on the Lake Drive Loan, in the total claimed amount of $247,886.92.

46.     On May 1, 2013, Trott & Trott sent another letter on Nationstar's behalf acknowledging Plaintiffs' request to discuss a loan modification and/or loss mitigation options, and requesting extensive financial information from Plaintiffs, all of which had previously been submitted by Plaintiffs to Nationstar.

47.     On May 4, 2013, Nationstar sent a letter to Bruce containing information about "Making Home Affordable" ("MHA") loan modifications and indicating that such a modification may be available with respect to the Lake Drive Loan.

48.     However, at that time Nationstar was acting as subservicer on behalf of First Tennessee Bank with respect to the Lake Drive Loan, and because First Tennessee Bank did not participate in the MHA program, Nationstar was actually unable to offer an MHA modification with respect to the Lake Drive Loan.

49.     On May 29, 2013, Nationstar via letter indicated that additional documents were necessary to "evaluate your request for the BoNY Trial Period."

50.     On June 29 and June 30, 2013, Plaintiffs sent the requested documents to Nationstar, care of Nationstar employee and new point of contact "Shanta Hunnecook."

51.     On July 10, 2013, Nationstar, through Trott & Trott, again posted a Notice of Mortgage Foreclosure Sale on Lake Drive, indicating that a sheriff's sale would be held on August 7, 2013.

52.     On September 24, 2013, Ms. Hunnecook related to Plaintiffs that the sheriff's sale scheduled for August 7, 2013 had been postponed to November 6, 2013.

53.     On October 15, 2013, Nationstar via letter indicated that Nationstar was "unable to grant your request" for a modification, because Plaintiffs purportedly "did not provide us with

the documents we requested." Plaintiffs again re-sent the requested information to Nationstar on October 28, 2013.

54.     On October 31, 2013, Nationstar via letter indicated that it had "received your documentation for the BoNY [modification] Trial Period" and indicated that "Nationstar Mortgage will now review your information to verify that you are eligible for this program." Nationstar stated that its evaluation would take 20-60 days and that Lake Drive would not be sold during the evaluation period.

55.     The same day, Nationstar sent another letter indicating that Nationstar was "missing the following required documents" and required Plaintiffs to send the identified documents by November 29, 2013, care of Nationstar employee and new point of contact "Tashara Goudiaby." Plaintiffs sent the requested documents to Nationstar on November 16 and November 29, 2013.

56.     The sheriff's sale was thereafter rescheduled to January 8, 2014.

57.     Nationstar sent yet another notice of default letter to Plaintiffs on February 14, 2014.

58.     On February 21, 2014, Nationstar once again sent a letter indicating that Nationstar had received Plaintiffs' inquiry regarding a loan modification. Nationstar indicated the required documents should be submitted by March 8, 2014 and that Lake Drive would not be sold while a modification request was being evaluated.

59.     On March 7, 2014, Plaintiffs faxed the requested documents to Nationstar.

60.     On April 2, 2014, Plaintiffs received a notice from Greenridge Realty stating that Lake Drive had been sold for $269,870.20.

61.     Plaintiffs had received no notice of a sheriff's sale to take place on April 2, 2014.

62.     Upon information and belief, Bank of New York Mellon, trustee for the holders of the Lake Drive Loan, purchased the Home at the April 2, 2014 sheriff's sale through a credit bid of the amount allegedly owing on the Lake Drive Loan.

63.     Plaintiffs received no notice from Nationstar, Bank of New York Mellon, Trott & Trott or anyone other than Greenridge Realty that Lake Drive had sold at a sheriff's sale on April 2, 2014.

64.     That same day, Barbara spoke to Nationstar employee "Dana" in Loss Mitigation regarding the purported sale of Lake Drive.  Dana indicated that Nationstar's file contained conflicting information regarding the sale, and transferred the call to another employee, "Wayne."  Wayne indicated that Lake Drive had been sold that day because Nationstar purportedly had not received the information requested by Nationstar in connection with Plaintiffs' modification request.

65.     In fact, Nationstar had received the requested information on March 7, 2014 and had not indicated to Plaintiffs that any information was missing.

66.     On April 2, 2014, after having spoken with Dana and Wayne of Nationstar, Barbara spoke with "Vicki," an employee of Trott & Trott, who indicated that Nationstar had called on April 2, 2014 to postpone the sheriff's sale, but the sale had already concluded by the time the call was received by Trott & Trott.

67.     Later that afternoon, Barbara spoke with "Chuck," a Nationstar employee, who indicated that Nationstar's file stated both that the house had sold, and conversely that the sale was confirmed to have been postponed.  Chuck indicated that it was too late to resolve the discrepancy because the foreclosure sale had already been completed.

68.     Later that afternoon, "Paris Smith," a Nationstar employee, returned Barbara's call, apologized for the "confusion" regarding the sale, and stated that the sale was to be rescinded.  Smith indicated that another Nationstar employee, "Irene Rump," was "handling" the file and that Barbara should not worry.

69.     Barbara telephoned Nationstar for a status update on April 4, 2014.  Nationstar employee "Kate" in Foreclosure Prevention stated that Nationstar's file indicated Plaintiffs' "claim" had been "escalated" and that Ms. Smith or Ms. Rump would call the following Monday when the issues were "resolved."   No Nationstar employee called Plaintiffs the following Monday.

70.     Barbara again telephoned Nationstar on April 14, 2014, leaving messages for Ms. Smith and Wayne asking for the status of Lake Drive.  Barbara called again, reaching employee "Jameeca," who indicated that both Ms. Smith and Ms. Rump were unavailable.  Jameeca also indicated that there were no notes in Nationstar's file indicating that anyone in management was working on the file.  Nationstar also purported to provide Ms. Rump's direct phone number; when Barbara telephoned that number a recording stated that this was a "non-working number."

71.     The following day, Barbara against left messages on the direct lines of Ms. Smith and Wayne asking for the status.   Ms. Smith returned the call and stated that she had confirmation that the sale of Lake Drive was to be rescinded.   Ms. Smith indicated that Nationstar's attorneys had made an error.  She also indicated that Ms. Rump was handling the file at that time.

72.     On April 22, 2014, Barbara telephoned Nationstar again and spoke to employee "Chuck," who indicated that he could not access Nationstar's file for the Lake Drive Loan

because it was password protected.  Chuck transferred Barbara to Ms. Rump's direct line.  There was no answer.

73.  On April 24, 2014, Barbara telephoned Ms. Smith at Nationstar for a status update.  Ms. Smith again advised Barbara that the sale of Lake Drive was in the process of being rescinded.

74.  Later that day, Barbara telephoned Trott & Trott and spoke with employee "Olga," who advised Barbara that the sale could not be rescinded because the sheriff's deed had been recorded on April 9, 2014.

75.  Directly following the telephone call with Trott & Trott, Barbara spoke with Ms. Smith, who refused to discuss the Lake Drive Loan or property.  Barbara was instead transferred to D. Lopez in the Deed in Lieu department, who advised Barbara that Nationstar's file had recently been updated by I. Rump to reflect that due to the "level of delinquency" and "incomplete file" on March 21, Nationstar management was "standing by its decision;" i.e., the sheriff's sale would stand and not be rescinded.  D. Lopez purported to give Barbara the direct phone number of Ms. Rump, but this was the same non-working phone number previously provided.

76.  Thus, on April 24, 2014, Plaintiffs discovered that numerous representations by Nationstar regarding the status of the foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, had been false, deceptive and misleading.

77.  On May 1, 2014, Barbara telephoned Nationstar and asked to be transferred to Ms. Rump's direct line.  Barbara left a message asking for confirmation of the information received from Nationstar on April 24, 2014.  Ms. Rump did not return the phone call.

78.    On May 12, 2014, Plaintiffs through their counsel informed Nationstar, through Trott & Trott, that the foreclosure sale had been wrongful and requested that the dispute be resolved via modification of the Lake Drive Loan.  Both Trott & Trott and Nationstar, via separate letters, responded that modification documents should be submitted by May 30, 2014 and that Nationstar would investigate and respond by June 13, 2014.

79.    On June 24, 2014, Nationstar responded, falsely stating that no error had occurred and that Nationstar's records reflected that the modification package had been incomplete.

80.    On July 15, 2014, Nationstar sent a letter to Plaintiffs' counsel indicating that Nationstar had received correspondence forwarded by the Making Home Affordable Help Desk on July 15, 2014 regarding Plaintiffs' concerns with the Lake Drive Loan and the foreclosure sale of Lake Drive.  Nationstar stated that it was "in the process of reviewing your concerns" and that "[o]ur goal is to provide the MHA Help Desk with a response no later than August 13, 2014."

81.    On August 15, 2014, Barbara again telephoned Nationstar for a status update. Nationstar employee C. Hubbert indicated that Nationstar's position was that the foreclosure sale of Lake Drive would stand and would not be rescinded due to the length of the delinquency.  C. Hubbert referred Barbara to another employee, Eric Foreman, to discuss options.  Mr. Foreman did not return multiple calls.

82.    On August 27, 2014, Barbara again called Nationstar and reported that Mr. Foreman was not returning her calls.  The Nationstar employee gave Barbara a new contact number for an employee with the same level of authority as Mr. Foreman.  Barbara telephoned the number given and left a voicemail message, which was never returned.

83.    On October 2, 2014, the redemption period for Lake Drive elapsed.

84.     On December 17, 2014, the purchaser of Lake Drive at the April 2, 2014 sheriff's sale, Bank of New York Mellon, as trustee for the holders of the Lake Drive Loan, sold Lake Drive via online auction for $108,150.  Plaintiffs' neighbor, Ryan Dykstra, was the purchaser.

85.     Mr. Dykstra subsequently began proceedings to evict Plaintiffs from Lake Drive.

86.     On January 23, 2015, Plaintiffs submitted information regarding Nationstar's handling of the Lake Drive Loan to the Consumer Financial Protection Bureau, which referred the information to Nationstar.

87.     On March 26, 2015, Plaintiffs through their counsel received a letter from Nationstar, dated March 5, 2015, stating that Nationstar was then "working through a settlement with all parties involved in order to remediate this matter."  Nationstar stated that according to its records, an "incomplete" modification application was received on March 8, 2014 but "not uploaded into our system until March 21, 2014.  An error occurred prior to the foreclosure sale in that you were not at least verbally notified of the missing documents needed in order to review the account for payment assistance."

88.     Thus, on March 26, 2015, Plaintiffs discovered that Nationstar had failed to take timely action to respond to Plaintiffs' request to avoid the foreclosure of Lake Drive through the modification request and information they submitted to Nationstar on March 7, 2014.

89.     Plaintiffs are presently under court order to relinquish possession of Lake Drive. Plaintiffs are appealing that order.

90.     As a result of the wrongful sheriff's sale of Lake Drive, and Nationstar's wrongful conduct in connection with its servicing of the Lake Drive Loan, Plaintiffs may lose ownership of their residence as well as all equity they had in the property.  Moreover, because Nationstar continued to promise that the sale would be or could be rescinded following the April 2, 2014

sale, the redemption period has now elapsed, and Plaintiffs are in danger of permanently losing all rights to Lake Drive.

**Nationstar's Misconduct Regarding the Scenic Drive Loan.**

91.     Nationstar sent a letter to Bruce in August of 2011 referencing Scenic Drive and indicating his "options" under MHA.

92.     Nationstar also initiated foreclosure proceedings shortly thereafter, despite Plaintiffs' attempts to pay all amounts necessary to reinstate the Scenic Drive Loan.

93.     Between December of 2011 and March of 2015, on numerous occasions Nationstar failed to credit amounts paid by Plaintiffs on the Scenic Drive Loan, failed to correctly account for payments made and failed to reinstate the Scenic Drive Loan.

94.     Plaintiffs continued to make payments to Nationstar on the Scenic Drive Loan throughout that time in attempts to become current.  Plaintiffs also continued to communicate with Nationstar in efforts to avoid foreclosure.

95.     On October 16, 2014, Nationstar sent Bruce a letter stating that he had been approved for a repayment plan.  However, that letter indicated that the first payment under that plan was due October 2, 2014.

96.     On November 25, 2014, Plaintiffs received a letter indicating that Nationstar considered the Scenic Drive Loan to be in default and that foreclosure proceedings had been initiated.

97.     As of November 25, 2014, Nationstar knew that Barbara owned Scenic Drive as a grantee of a warranty deed to that property.

98.     Nationstar was also aware, or should have been aware, that serious irregularities existed with respect to the Scenic Drive Mortgage in that the Scenic Drive Mortgage bore

various indicia of forgery, including that the Scenic Drive Loan application and draft loan and mortgage documents bore signature lines only for Bruce; only Bruce's credit history information had been obtained; and the Scenic Drive Mortgage contained apparent alterations that may have been (and in fact were) added subsequent to Bruce's execution of the Scenic Drive Mortgage.

99.     Over the next several months, on numerous occasions Nationstar provided to Plaintiffs different and conflicting information regarding the amounts necessary to bring the Scenic Drive Loan current.  During this time Nationstar provided inaccurate information to Plaintiffs regarding the amounts necessary to bring the Scenic Drive Loan current.

100.    Between November of 2014 and March of 2015, Nationstar and its agents also provided Plaintiffs with misleading information regarding the timing of a sheriff's sale of Scenic Drive.  For example, whereas Nationstar had set the sheriff's sale for January 23, 2015, on February 20, 2015—nearly a month after the date previously provided by Nationstar— Nationstar's agent provided notice to Plaintiffs that the sheriff's sale was being postponed until March 6, 2015.

101.    On March 5, 2015, Nationstar employee Lori Rohrman sent an email to Barbara confirming that Nationstar had a copy of Bruce's authorization for Barbara to obtain information from Nationstar about the Scenic Drive Loan.  Ms. Rohrman indicated that this authorization had been needed because Barbara was not on the mortgage.

102.    On March 5, 2015, Plaintiffs, through their counsel, requested that Nationstar postpone the sheriff's sale set for March 6, 2015 given that: (1) there was confusion over whether Barbara was a mortgagor or not, since Nationstar indicated that she was not on the mortgage while the notice of sheriff's sale indicated that she was a mortgagor; and (2) Plaintiffs wished to reinstate the loan.  Nationstar did not postpone the sale.

103.     On March 6, 2015, Plaintiffs again requested that the sale be postponed so that funds sufficient to bring the Scenic Drive Loan current could be transferred from Plaintiffs' investment account and made available for transfer to Nationstar the following day.

104.     On March 6, 2015, a sheriff's sale of Scenic Drive was held.  The purchasers of the sheriff's deed, John and Chelsie Morris, bid exactly $1 more than the bank's credit bid.

105.     Because the Scenic Drive Mortgage was forged and invalid, Nationstar never had the right to sell Scenic Drive at the sheriff's sale on March 6, 2015.  Nationstar thus wrongfully foreclosed on Scenic Drive in an attempt to collect a debt from Plaintiffs.

106.     Subsequent to the March 6, 2015 sheriff's sale, Mr. and Mrs. Morris have exercised their purported rights to inspect Scenic Drive on at least one occasion.

107.     In order to preserve their rights to Scenic Drive, Plaintiffs have been forced to obtain counsel to prepare and prosecute a quiet title action with respect to Scenic Drive in the Muskegon County Circuit Court against Mr. and Mrs. Morris, Nationstar, First Horizon and Bank of New York.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

108.     The foregoing paragraphs are incorporated herein by reference.

109.     Nationstar's statements regarding the status of the Lake Drive foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, constituted "communications" as the term is defined in the FDCPA, MOC and MRCPA.

110.      Nationstar's statements regarding the status of the Lake Drive foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, constituted false representations regarding the character, amount, or legal status of a debt, in violation of 15 U.S.C. Section 1692e.

111. Nationstar's statements regarding the status of the Lake Drive foreclosure, dated February 21, 2014; April 2, 2014; April 15, 2014; and April 24, 2014, *inter alia*, constituted deceptive, unconscionable and unfair means of collecting or attempting to collect a debt, in violation of 15 U.S.C. Section 1692f.

112. Nationstar's sale of Lake Drive on April 2, 2014, despite the pendency of a complete modification application submitted on or before March 8, 2014, and its failure to rescind the April 2, 2014 foreclosure sale after its repeated promises to do so constituted deceptive, unconscionable and unfair means of collecting or attempting to collect a debt.

113. The mortgages of Scenic Drive and Lake Drive purportedly given by Bruce in favor of First Horizon on April 18, 2006 and April 24, 2006 were never signed by Barbara. Barbara's undivided interest in Scenic Drive and Lake Drive were thus not subject to valid mortgages and could not be extinguished via foreclosure.

114. Nationstar's sale of Lake Drive on April 2, 2014, and its subsequent failure to rescind the sale despite its promises to do so, thus constituted taking nonjudicial action to effect dispossession of property where there was no present right to possession of the property claimed as collateral through an enforceable security interest, in violation of 15 U.S.C. Section 1692f.

115. Several of Nationstar's communications with Plaintiffs regarding the status of the Scenic Drive foreclosure between November of 2014 and March of 2015 constituted deceptive, unconscionable and unfair means of collecting or attempting to collect a debt, in violation of 15 U.S.C. Section 1692f.

116. Nationstar's sale of Scenic Drive on March 6, 2015 constituted taking nonjudicial action to effect dispossession of property where there was no present right to possession of the

property claimed as collateral through an enforceable security interest, in violation of 15 U.S.C. Section 1692f.

117.    As an actual and proximate result of the acts and omissions of Nationstar in violation of the FDCPA, Plaintiffs have suffered actual damages and injury, including but not limited to monetary loss, fear, stress, mental anguish, emotional stress, anxiety, loss of sleep, and suffering, for which they should be compensated in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a.  Actual and statutory damages pursuant to 15 U.S.C. Section 1692k(a);

    b.  Costs and reasonable attorney fees pursuant to 15 U.S.C. Section 1692k(a)(3); and

    c.  Such further relief as the Court deems just and proper.

## COUNT II – RESPA

118.    The foregoing paragraphs are incorporated herein by reference.

119.    The Lake Drive Loan and the Scenic Drive Loan are "federally related mortgage" loans as that term is used in 12 U.S.C. Section 2605(k)(1) because they were purportedly secured by first liens on residential real properties designed principally for the occupancy of one family; and were made in whole or in party by a creditor which makes or invests in residential real estate loans aggregating more than $1,000,000 per year.

120.    Nationstar violated 12 U.S.C. Section 2605(k)(1)(C) by failing to take timely action to respond to Plaintiffs' requests in connection with avoiding the foreclosure sale of Lake Drive.

121.    Nationstar violated 12 U.S.C. Section 2605(k)(1)(C) by failing to take timely action to respond to Plaintiffs' requests in connection with avoiding the foreclosure sale of Scenic Drive.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a.    Actual damages pursuant to 12 U.S.C. Section 2605(f)(1)(A);

    b.    Additional damages due to Nationstar's pattern or practice of noncompliance, pursuant to 12 U.S.C. Section 2605(f)(1)(B); and

    c.    Reasonable attorney fees and court costs pursuant to 12 U.S.C. Section 2605(f)(3).

## COUNT III – MICHIGAN OCCUPATIONAL CODE

122.    The foregoing paragraphs are incorporated herein by reference.

123.    Nationstar acted as a debt collector in the State of Michigan without being licensed as required by Mich. Comp. Laws Section 339.904.

124.    Nationstar's actions to collect a debt from Plaintiffs, including its false, misleading, and deceptive communications to Plaintiffs and its utilization of unconscionable and deceptive means of collecting a debt from Plaintiffs, violated Mich. Comp. Laws Section 339.904(1) and caused actual damages to Plaintiffs.

125.    Alternatively, if Nationstar was a licensed debt collector pursuant to Mich. Comp. Laws Section 339.904, Nationstar's actions to collect a debt from Plaintiffs, including its false, misleading, and deceptive communications to Plaintiffs and its utilization of unconscionable and deceptive means of collecting a debt from Plaintiffs, violated Mich. Comp. Laws Section 339.915.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a.  Statutory damages and treble actual damages pursuant to Mich. Comp. Laws Section 339.916; and

    b.  Reasonable attorney fees and court costs pursuant to Mich. Comp. Laws Section 339.916(2).

## COUNT IV – MICHIGAN REGULATION OF COLLECTION PRACTICES ACT

126.    The foregoing paragraphs are incorporated herein by reference.

127.    Nationstar is a regulated entity under the MRCPA, Mich. Comp. Laws Section 445.251.

128.    Nationstar's actions to collect a debt from Plaintiffs, including its false, misleading, and deceptive communications to Plaintiffs and its utilization of unconscionable and deceptive means of collecting a debt from Plaintiffs, violated Mich. Comp. Laws Section 445.252.

129.    Nationstar's violation of the MRCPA was willful.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Nationstar for:

    a.  Statutory damages and treble actual damages pursuant to Mich. Comp. Laws Section 445.257; and

    b.  Reasonable attorney fees and court costs pursuant to Mich. Comp. Laws Section 445.257.

Respectfully submitted,

Dated:  May 22, 2015

/s/Theodore J. Westbrook
Theodore J. Westbrook (P70834)
Amanda P. Narvaes (P74957)
**Drew, Cooper & Anding, P.C.**
Attorneys for Plaintiffs
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300
twestbrook@dca-lawyers.com
anarvaes@dca-lawyers.com

## JURY DEMAND

Plaintiffs Bruce Craigie and Barbara Craigie hereby demand trial by jury as to any and all claims and issues so triable.


Dated:  May 22, 2015

/s/Theodore J. Westbrook
Theodore J. Westbrook (P70834)
Amanda P. Narvaes (P74957)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiffs
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300
twestbrook@dca-lawyers.com
anarvaes@dca-lawyers.com


I:\JEATeam\3378-01\PLEADINGS\Amended_ Complaint.docx