UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRUCE CRAIGIE and BARBARA CRAIGIE,

        Plaintiffs,

    v.                        File No. 1:15-CV-441

NATIONSTAR MORTGAGE, LLC, a
limited liability company; and
JOHN DOES 1-5, unnamed individuals,

        Defendants.
_____/


Hearing re:  Motions to Compel Discovery

Before

THE HONORABLE ELLEN S. CARMODY
United States Magistrate Judge
June 15, 2016


APPEARANCES


THEODORE J. WESTBROOK        ELISA J. LINTEMUTH
80 Ottawa Ave., NW, Ste. 200  LAURA C. BAUCUS
Grand Rapids, MI 49503        300 Ottawa Ave., NW
Attorney for Plaintiffs       Suite 700
                            Grand Rapids, MI 49503
                            Attorneys for Defendants


Digital audio recording transcribed by:

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                    Grand Rapids, Michigan
 2                                    June 15, 2016
 3                                    11:09 a.m.
 4                          -   -   -
 5
 6                  P R O C E E D I N G S
 7
 8          THE CLERK:  The Court calls case 1:15-CV-441,
 9   Craigie, et al., v. Nationstar Mortgage, et al.
10          THE COURT:  Good morning.  Counsel, would you please
11   put your appearances on the record?
12          MR. WESTBROOK:  Good morning, Your Honor.  Theodore
13   Westbrook on behalf of the plaintiffs.
14          THE COURT:  Good morning.
15          MS. BAUCUS:  Laura Baucus, Your Honor, on behalf of
16   Nationstar.
17          THE COURT:  Good morning.
18          MS. LINTEMUTH:  Elisa Lintemuth, Your Honor, on
19   behalf of defendant Nationstar Mortgage.
20          THE COURT:  Good morning.
21          This matter is before the Court on three motions, I
22   believe.  The first is plaintiffs' motion to enforce discovery
23   order, to compel discovery, and for sanctions.  That's docket
24   70, number 70.  And then there is -- I've reviewed that.  I've
25   reviewed the response and then there was a reply, I believe,
```

1    filed pursuant to motion.  And then defendants' motion to

2    compel, that's docket 80, and I've reviewed that and the

3    response, and I believe there was late yesterday a motion to

4    file a reply brought by defendants, I think.

5         MS. BAUCUS:  Correct, Your Honor.

6         THE COURT:  And I'm going to allow that motion to

7    reply since I've already read it, so I don't see any reason to

8    deny it.  Oh, that's a motion for leave to file a reply and a

9    sur-reply in opposition to plaintiffs' third motion to compel,

10   and that would be docket 98.

11        I have reviewed the parties' pleadings in this

12   matter.  I went back and I reviewed the First Amended

13   Complaint and the Case Management Order, and first of all, it

14   appears to me that you're way beyond the discovery deadline

15   unless there was another amendment that I missed.  Mr.

16   Westbrook?

17        MR. WESTBROOK:  Your Honor, the discovery period

18   ended --

19        THE COURT:  January?

20        MR. WESTBROOK:  -- at the end of April.

21        THE COURT:  Oh, April?  Did I extend it, then?

22        MR. WESTBROOK:  I believe so, Your Honor.

23        THE COURT:  Okay.  All right.  And then this was --

24   I assume that what you're going to tell me, Mr. Westbrook, is

25   that you took the third-party -- the 30(b)(6) deposition and

1    that's why you were beyond the deadline?

2              MR. WESTBROOK:  Yes, Your Honor.  We reached out to

3    Nationstar's counsel about some issues with the deposition

4    itself and with some document discovery issues that were

5    raised during the deposition just after the deposition took

6    place and just at the end of the discovery period.  I want to

7    say April 29th is when we brought these issues up, and we

8    filed our motion as soon thereafter as we could after having

9    done our meet and confer obligations.

10             THE COURT:  Okay.  Now, who is going to speak to the

11   motion to compel on behalf of Nationstar?

12             MS. LINTEMUTH:  I am, Your Honor.

13             THE COURT:  All right.  I'm puzzled here because as

14   I understand it, one of plaintiffs' contentions is that there

15   was an affidavit filed and that there are documents that do

16   exist that were not produced previously.  I really don't

17   understand what your position is on that.  Do the documents

18   exist and you say they're not relevant or do they not exist?

19             MS. BAUCUS:  I'm sorry, Your Honor.  To clarify, I'm

20   arguing in response to plaintiffs' motion to compel.  Elisa is

21   doing our motion to compel.  Sorry.

22             THE COURT:  Okay.  All right.  So what's the status

23   of things?  Do they exist and you claim they're privileged or

24   do they not exist?

25             MS. BAUCUS:  The documents which plaintiffs are

1   claiming exist do not exist, never have existed.  We submitted

2   an affidavit which state they don't exist.  Our 30(b)(6)

3   witness testified they don't exist.  There was no -- this

4   motion is based on a mischaracterization of that testimony.

5           I mean, what prompted this motion in our opinion are

6   two things, Your Honor, the motion to compel filed by

7   plaintiffs.  There was a series of documents Nationstar

8   produced that counsel, myself, did not know prior to this

9   lawsuit even being filed.  So these are documents that

10   plaintiffs have had well over a year, and it's the subject of

11   our motion to compel.  We weren't aware that this separate

12   production had been made.  Somehow Nationstar produced it.  It

13   wasn't subject to the typical attorney review that would

14   happen and the appropriate redactions weren't made,

15   attorney-client privilege redactions weren't made, and one of

16   those documents is a HAMP certificate which opposing counsel

17   and plaintiffs have had for well over a year.

18           Now, Your Honor, there have been two motions to

19   compel, two sets of discovery where plaintiffs have said, you

20   know, I see this document's referenced in Nationstar's

21   servicing notes.  I see this document, this document, this

22   document, claimed documents, but they're not.  They're just

23   terms of art used by Nationstar.  Never once was HAMP

24   certification document referenced, never once.  When we had

25   that motion here where Nationstar submitted an affidavit, that

1    wasn't it.  Never once.

2          It was sort of subterfuge waiting to this deposition

3    saing, Here's this document you've claimed never existed.  No,

4    never once in discovery did you ask about this document.  Had

5    you done so, we would have done our due diligence, followed up

6    with our client, and confirmed for you this is subject to

7    attorney-client privilege.

8          THE COURT:  Okay.  Let me just interrupt if I may

9    because I don't want to lose track of my questions.  I

10   reviewed the Amended Complaint again and it seems to me that

11   plaintiffs are saying that they were attempting to cooperate

12   with an attempted loan modification.

13         And just let me say whether Regulation X applied or

14   not, I'm not concerned with that right now.  I mean, I'm not

15   prepared to decide that.  That as I understand may be subject

16   to your pre-motion conference request.

17         Now, it seems to me two things are very relevant.

18   One is Nationstar's policies regarding what documents are

19   required for a loan modification request because as I

20   understand it your defense is that it was never completed or

21   it was never even started is my understanding.  And then it

22   also seems very highly relevant to me what documents plaintiff

23   had actually provided to you.  Now, are either of those topics

24   subject of this motion to compel?

25         MS. BAUCUS:  These are -- this is the exact topic of

```
 1    plaintiffs' motion to compel, and I'm glad you asked it so I
 2    can respond to it.   There's two separate loan modification
 3    applications or loss modification applications at issue here.
 4    One I'll call it 2013; one I'll call it 2014.   And though I
 5    understand your position is that our argument the regulation
 6    doesn't apply, Regulation X does not apply is something for
 7    Judge Neff during the pre-motion conference, I do need to
 8    raise it here again because their whole argument is we have
 9    to -- you know, we need to see your policies because your
10    policies will show us that you violated Regulation X.   The law
11    is clear in this jurisdiction Regulation X does not apply in
12    2013.   So this is -- it's a wild goose chase.   Our third
13    motion to compel on these proprietary confidential -- you
14    know, our procedures, and the law doesn't even apply.
15             THE COURT:   Wait a minute.   Just a minute.   Just a
16    minute.   Are you suggesting to me that if I become an employee
17    at Nationstar Mortgage and I'm being asked to process loan
18    modification requests, that the list of documents that is
19    required is proprietary?
20             MS. BAUCUS:   No, I am not saying just the list.
21    They've asked for the entire policy.   But if you want to see
22    the list of documents, that is identified in the letters we
23    sent to plaintiffs.
24             Now, first of all, the 2013 modification request,
25    plaintiffs admit they sent nothing.   So this wild goose chase
```

1    to see what do our policies say, they admit they sent nothing,

2    so what does it matter?  They sent an e-mail with a TIF

3    document.  They admit this in their deposition.  Nationstar

4    responded.  The letter said send it fax or mail --

5             THE COURT:  I read that.

6             MS. BAUCUS:  -- but we can't open a TIF document.

7    Send it PDF.  They admit they never sent a PDF.  How can

8    Nationstar ever do an evaluation of anything without

9    anything?  They never sent anything.  What does it matter?

10            THE COURT:  What I'm suggesting to you is that I'm

11   not here to decide the substance of this case.  I'm here to

12   decide whether things are relevant, do they exist, have they

13   been produced, okay?  And I understand your argument.  I

14   understand your frustration.

15            But I still go back and ask you do you have policies

16   that were in place that regardless of Regulation X and whether

17   it applies or doesn't apply -- I know you cited a West

18   Michigan case.  I don't know that Judge Neff is going to

19   follow that.  I don't know that she has to follow that.  I

20   don't know the answer to that, okay?  Don't know the

21   answer right now.  But what I do know is that it seems to me

22   that what was required at the time they were applying is very

23   relevant and what they sent or didn't send is also very

24   relevant to the facts in the case.

25            MS. BAUCUS:  And the record already shows both those

1    things.  In both instances, 2013 modification application,

2    2014, there were very specific letters sent to plaintiff

3    saying this is what you have to send, notably income support.

4    Obviously you can't do a loan modification.  Nobody disputes

5    that.  Plaintiff admits those were sent.  For 2013

6    modification they sent nothing.  They have the letter the

7    application says we have to send.  They admit they sent

8    nothing.  They didn't follow the procedures to send it, and

9    Nationstar said, Send it in a PDF.  They never did.  That's

10   not in dispute.

11           For the 2014 application, the HAMP application

12   modification, there's a letter dated February 21, 2014, stated

13   exactly what you have to send or send in.  It stated it.  They

14   knew it.  It was income support.  They sent it in.  They admit

15   this is the body of documents we sent in.  They admit no, this

16   body of documents is not everything asked for in that February

17   21st letter.  There's absolutely no dispute about those two

18   things.

19           THE COURT:  Well, I --

20           MS. BAUCUS:  So what else are they looking for

21   here?

22           THE COURT:  I'm asking you what are they looking

23   for.  Do you have a list of your policies somewhere?  Well,

24   let me ask Mr. Westbrook.  I'll get back to you.

25           MS. BAUCUS:  Thank you.

1          THE COURT:  What is it you're looking for?  Because
2    I have to tell you I've read all your briefs and I've spent a
3    considerable amount of time on this, and I'm not sure what it
4    is really you are --
5          MR. WESTBROOK:  Well, Your Honor, what we keep
6    running into when we look for documents, we look for documents
7    that we've learned about as a result of the production of
8    the -- what Nationstar calls the LSAMS notes.  That's all they
9    want to produce to us.  They don't want to produce anything
10   else to us.  They say everything relevant is in there.
11          Well, there are all these other document systems
12   that contain information that's relevant to these loans, how
13   these loans were handled, how the foreclosure was handled, how
14   the modification requests were handled.  There are document
15   systems that include a wealth of information about those
16   things that are relevant to our claims, particularly our FDCPA
17   claim and our RESPA claim, and they don't want to produce
18   those.  They say, Well, everything relevant is in the LSAMS
19   notes.  Everything in the Remedy system, the GameChanger
20   system, the Filenote system --
21          THE COURT:  What documents -- how would you label
22   the documents that you think are relevant and they have not
23   produced and exist?
24          MR. WESTBROOK:  The testimony of their 30(b)(6)
25   witness was that there's a system called Remedy that includes

1    the inputs into the modification system that Nationstar has.

2    So that will show what financial information was obtained from

3    the plaintiffs in connection with their modification requests.

4              THE COURT:  And your request is simply for the

5    plaintiffs' two loans in this matter?

6              MR. WESTBROOK:  Exactly right, Your Honor, and I

7    think it's very relevant.  I don't think it would be

8    burdensome or difficult for them to produce it, and that's one

9    item.

10             There's also an entire other document system called

11   LPS that apparently is used in some way in connection with

12   preparing files for foreclosure.  There's information and

13   there's testimony, 30(b)(6) testimony on this, that that

14   information is going to be specific to the plaintiffs' loans

15   as well, and we're not looking for anything related to other

16   loans.  We're looking for information that's specifically

17   related to these two loan numbers, these two account numbers.

18   And it wouldn't be hard to produce.

19             Well, why doesn't Nationstar want to produce it?  I

20   don't know.  But it will be relevant in one way or another.

21   Either it will be consistent with what the LSAMS notes says,

22   in which case Nationstar is right, there's no additional

23   relevance to this information beyond what's in the LSAMS

24   notes.  I can't make that decision without seeing those

25   documents or at least knowing what's in them.

```
 1              And this claim of privilege, there's a claim of
 2    privilege running through all the LSAMS information.  In fact,
 3    what I asked their witness is there any factual information
 4    contained in the LSAM -- in the LPS system, rather, is there
 5    any factual information contained in that, is it used in-house
 6    by Nationstar, I got instructions not to answer.  Everything
 7    in LPS is privileged.  Well, why isn't any of it on a
 8    privilege log?  The answer is Nationstar just doesn't want to
 9    produce it.  They don't want us to know what's in there.  And
10    I think that's going to show that there's more information
11    there that's not been made available to us yet and it's
12    different from what's been provided to us so far.
13              THE COURT:  Okay.  Thank you.
14              Yes?
15              MS. BAUCUS:  May I respond, Your Honor?  Again,
16    there's been no information, nothing, no testimony what
17    exactly it is they're looking for.  LPS --
18              THE COURT:  He just told you.  Wait a minute.  I
19    take issue with that.  He just told you.  Now, if you can tell
20    me there's some reason that you shouldn't have to produce it
21    or it doesn't exist, I'm all ears.
22              MS. BAUCUS:  My apologies.  Correction, there's been
23    no specific information he believes that are in these systems
24    that is relevant to the case.
25              LPS, this is the attorney-client privileged
```

1  communication system between Nationstar and its foreclosure

2  counsel.  This is a system used, you know, throughout the

3  industry for the same purpose.  Mr. Westbrook practices this

4  type of law.  We practice this type of law.  It's not unusual.

5  There was a privilege log that referenced LPS notes being

6  redacted.  That was something we produced way back last year.

7  There was no objection.

8          This is nothing new.  LPS is not a, you know,

9  gotcha.  This is an attorney-client privileged system.  That's

10  how foreclosure counsel and Nationstar can communicate whether

11  foreclosure -- attorney-client privileged information about a

12  foreclosure, you know, without saying more.

13          THE COURT:  Have you produced the LPS materials

14  relevant to these two loans redacted or not produced them?

15          MS. BAUCUS:  We have not, absolutely not.

16          THE COURT:  Because your claim is that they're all

17  privileged?

18          MS. BAUCUS:  They are.  In fact, this HAMP

19  certificate that, you know, wa-la, they thought they got us

20  producing it that they've had well over a year before the

21  deposition that we didn't know about, that's part of LPS.

22  That's why our witness wasn't familiar with it in connection

23  with this lawsuit because it was not, you know, a deposition

24  about attorney-client privileged information.  So there should

25  not be a dispute about LPS.  I don't know where this dispute

1   has come from, but it is attorney-client privileged.

2          Remedy, this is a system that houses and summarizes

3   financial information submitted by the borrower.  And again,

4   it is not something -- I attest to you, Your Honor, the

5   undisputed testimony here, there's no dispute about what the

6   borrower sent in.  There's no dispute.

7          THE COURT:  No, I am not -- I've already told you

8   I'm not buying that argument, okay?  If it's information that

9   is sent by them and you say there's nothing there, well,

10  that's good for you.  But he doesn't have to take your

11  position as fact in the discovery process.

12          MS. BAUCUS:  Your Honor, we're using their own

13  deposition testimony we're citing.  It's not our position.

14  It's their client's testimony.

15          THE COURT:  All right.

16          MS. BAUCUS:  But it's not -- you know, LSAMS, the

17  system notes, the central nervous keeping which we produced,

18  every contact with the borrower is imprinted on there.  That's

19  what Nationstar uses for its own purposes.  That's what we

20  produced.  That's what's produced in all cases.

21          Remedy summarizes some financial information, but

22  it's not a system that you can hit a button and print it.  In

23  fact, I don't even know how you could produce it.  It is a

24  system on a computer.  That's something we would have to look

25  into.  I don't know if you take a snapshot.  It's something an

 1    IT person would have to do.

 2          But saying that this is easy, it wouldn't be hard,

 3    there's no burdensome -- weighing the proportionality is

 4    something that is relevant here.  We have over a thousand

 5    documents produced, seven hours of deposition testimony, and

 6    again, it's something that can't prove anything when his

 7    client admits what they sent in.

 8          THE COURT:  Well, maybe they're mistaken about what

 9    they sent in.  I mean, I'm just telling you I read the Amended

10    Complaint today and it sounded crazy-making.  I mean, I don't

11    know if it's true, not true.  That's not my decision to make.

12    But it sounded like crazy-making with all the alleged facts

13    going back and forth and they contacted us and then they said

14    our stuff is out of date and then blah-blah-blah.  I mean, it

15    just sounded crazy-making.

16          MS. BAUCUS:  Well, I don't quite know how to respond

17    to that.

18          THE COURT:  I'm sure you don't, but I'm just

19    being --

20          MS. BAUCUS:  But with regard to the Amended

21    Complaint, obviously our job is to ferret that out.

22          THE COURT:  I understand.

23          MS. BAUCUS:  And the testimony, they are -- their

24    testimony is what it is, what it is, and it's consistent with

25    what our facts show.  You know, they sent in what they admit

1    they sent in, and they just didn't send in the information and

2    they have a history of that.

3            They're not claiming that there's other information

4    that they sent in that we're not acknowledging.  That's the

5    issue that I'm having difficulty with.  I feel like this is a,

6    you know, fishing expedition.  There's not -- it would be

7    different if Mr. Westbrook came in here and said, My client

8    said they produced this document and this document and this

9    document.  There's none of that here.

10           THE COURT:  Um-hum.  I got it.

11           MS. BAUCUS:  So that is our concern.  Again, and

12   not -- I want to make sure I'm not waiving the rights of

13   confidentiality and propriety because these are Nationstar's

14   policies.

15           THE COURT:  Okay.  All right.  Got it.

16           MS. BAUCUS:  If you have any further questions, Your

17   Honor?

18           THE COURT:  No, I'm ready.  I'm ready.

19           MS. LINTEMUTH:  I just want to clarify one quick

20   thing, Your Honor.

21           THE COURT:  All right.

22           MS. LINTEMUTH:  Because I was the one who did the

23   privilege log.  The LPS entries that were navigated into the

24   LSAM notes were redacted and we did produce a privilege log in

25   connection with those.  But we learned at the 30(b)(6)

1    deposition that plaintiffs already had an unredacted version

2    of the LSAMS notes, so they do already have some of that LPS

3    information.

4              MR. WESTBROOK:  Your Honor, can I just briefly, very

5    briefly address the privilege issue?

6              THE COURT:  Please, very briefly.

7              MR. WESTBROOK:  I apologize, Your Honor, but it's

8    important, just a window into what Nationstar thinks is

9    privileged.

10             The LPS system apparently housed this HAMP

11   foreclosure certificate document which is attached to our

12   motion as Exhibit 7.  They say that's privileged.  Well, it's

13   not to an attorney.  Doesn't say anything about legal advice.

14   Doesn't appear to be confidential.  It's in their LPS system,

15   apparently.

16             They're saying every single thing in the LPS system

17   is privileged.  That's why this wasn't produced.  Well,

18   there's no privilege log.  There's no indication that any of

19   that stuff is actually privileged.  Thank you, Your Honor.

20             THE COURT:  All right.  I have a question for you,

21   Mr. Westbrook.  What is the status of these two properties

22   right now?  Are your clients still in possession of them?

23             MR. WESTBROOK:  Well, the property in Muskegon which

24   is called the Scenic Drive property, the redemption period has

25   been equitably extended on that property, and so there's an

1    open but stayed lawsuit in Muskegon County Circuit Court.   So

2    I guess I would say there is a sheriff's deed out there on

3    that property, but --

4              THE COURT:  But it's been stayed?

5              MR. WESTBROOK:  But it's been stayed, and so the

6    plaintiffs are still in -- they still own that property.  The

7    redemption hasn't expired.  It's my understanding that they

8    are preparing to attempt to redeem that property and that's in

9    process.

10             THE COURT:  Okay.

11             MR. WESTBROOK:  The Lake Drive property that's here

12   in town, that property, it was past redemption at the point

13   where they started having legal counsel advise them on these

14   issues, and there have been a lot of legal proceedings having

15   to do with that property which there's just recently been an

16   argument in front of the Michigan Court of Appeals on whether

17   they can regain property rights in that property, and I think

18   we're awaiting a decision from the Court of Appeals on that.

19             THE COURT:  All right.  Now, do they still live in

20   the Lake Drive home?

21             MR. WESTBROOK:  Yes, they do, Your Honor.

22             THE COURT:  All right.  Have they been doing

23   anything to escrow their payments on the note or anything like

24   that?

25             MR. WESTBROOK:  There are -- there is an escrow

1    arrangement that was put into place by the district court that

2    entered the eviction order.  There's been eviction proceedings

3    and so forth.  That's all sort of on hold while they wait for

4    the Court of Appeals to decide.

5              THE COURT:  Okay.  All right.

6              MS. BAUCUS:  A couple seconds, Your Honor?

7              THE COURT:  Go ahead.

8              MS. BAUCUS:  I would be remiss if I didn't add we

9    don't believe that sanctions are appropriate here and my

10   clients acted in good faith.  If you have any questions with

11   regard to that, I'd be happy to answer that.

12             THE COURT:  Okay.  All right.  I'm prepared to rule

13   on this.

14             First of all, I want to make this very clear that I

15   am not extending the pre-motion conference filing deadline or

16   the request for pre-motion conference filing deadlines, and I

17   think I'm crazy to allow this to go on so long after the

18   discovery period ended.  But I'm denying sanctions and I am

19   going to order that with regards to these two specific loans

20   that are at issue in this case, that the motion is

21   granted as to the Remedy documents.  Now, you say you don't

22   even know if you can print them, but I would expect some IT

23   genius could figure out how to make that happen, and this is

24   limited to these two loans.

25             It's denied without prejudice as to the LPS loans

1    because I don't have the sufficient information to know

2    whether a privilege was properly claimed or applied because

3    the parties didn't really brief that.  So that is my ruling on

4    plaintiffs' motion to compel.

5              In terms of the motion to compel brought by the

6    defendants, I would say this.  I'm going to grant that motion

7    insofar as defendant -- plaintiff wants to rely on any

8    information at the trial of this matter that is not in those

9    interrogatory answers.  In other words, compensatory damages,

10   if you're going to claim those, you need to lay it out what

11   you're going to claim and on what basis.

12             And the same would go for witnesses, obviously.  If

13   you don't know what a witness is going to testify to, I would

14   suggest that you amend those answers to include your known

15   witnesses and a summary of their testimony, and if you know

16   the topics that you think other witnesses will testify to,

17   that you do the best you can with that.  Otherwise, if I

18   were -- if I were the trial judge on this and you had not

19   given me more information in your interrogatory answers, I'd

20   start thinking about cutting and slashing your proofs.  I'm

21   just telling you.  So I would go back through those.

22             And it's granted in part and I think that the

23   defendants are entitled to know the factual basis for your

24   claims.  At some point you're going to have to cough these up

25   eventually anyway.  So it's granted insofar as my comments --

1    consistent with my comments on the record and denied

2    otherwise.

3         MR. WESTBROOK:  Your Honor, could I ask for a

4    clarification of your ruling?

5         THE COURT:  Absolutely.

6         MR. WESTBROOK:  You mentioned the Remedy documents,

7    which I appreciate the Court's ruling on that.  I think the

8    flip side of the Remedy documents is the policy and procedure

9    documents related to the types of modifications at issue with

10   respect to the Lake Drive loan.

11        THE COURT:  Well, see, I'm not so sure I agree with

12   that because it seems to me that what's relevant is what was

13   requested, what documents were requested and were they

14   produced and was the request or the failure to act in

15   violation of law?  I mean, but I don't see how -- A, B, and C

16   happened.  Either A, B and C violates the law or it doesn't.

17        MR. WESTBROOK:  Yes.  Your Honor, what I'm

18   interested in and I think what the Remedy documents get us to,

19   the Remedy documents show us what information Nationstar had.

20   The policy documents show us what information Nationstar

21   internally says it needs in order to evaluate a modification.

22   So it may not be exactly the same as what they said we want,

23   you know, what they've told plaintiffs we want to see this

24   information.  It may or may not actually be needed according

25   to their internal policies to evaluate the modification

1    requests.

2             THE COURT:  What about Ms. Baucus's response that

3    you have letters laying out what documents they have

4    requested?  Either that's a violation of law or it's not.

5             MR. WESTBROOK:  And, Your Honor, I think it actually

6    shows a violation of the law, particularly FDCPA which relates

7    mainly to misrepresentations in connection with collection of

8    debts if they're saying we can't evaluate this because we need

9    more documents when in fact they really don't need more

10   documents.  We can't see that without seeing both their

11   request for more documents and what their internal policy says

12   about what documents they need.

13            THE COURT:  All right.  Ms. Baucus, let me hear from

14   you on that point.

15            MS. BAUCUS:  This is a new theory, Your Honor, so

16   with regard to responding, and I know you're not here to

17   decide the law, but again --

18            THE COURT:  I'm here to decide the law, but not the

19   case.

20            MS. BAUCUS:  Exactly.  But Nationstar is entitled to

21   request documents that it needs to evaluate a modification,

22   and it told plaintiff what it is.  This theory that somehow

23   the FDCPA relates to its internal policies, there's zero law

24   that supports that, and if there had been any inkling, it

25   would have been cited in his brief.  He's a very good brief

1    writer.  He's written three briefs at this point.  That is a

2    newly-created argument at this point.  The FDCPA --

3            THE COURT:  I think you quoted a Michigan Court of

4    Appeals case to that effect, did you not?  Did you not cite a

5    Michigan Court of Appeals case for the proposition that the

6    policies are not relevant?

7            MS. BAUCUS:  We did.  I'd say --

8            THE COURT:  That's what I meant, you.

9            MS. BAUCUS:  Yes, we cited that.  But with regard to

10   this theory plaintiffs have now that it's somehow relevant to

11   the FDCPA claim, I've never heard that before.  It simply is

12   not.  The FDCPA claim by the pleadings relates to

13   misrepresentations made with regard to the sheriff's sale.  It

14   doesn't have to do with alleged misrepresentations in our

15   letter that says we need X, Y, and Z and they didn't return

16   it.

17           THE COURT:  Okay.  I think I started out with this

18   question, and one thing I'm troubled by, and I'm guessing that

19   Mr. Westbrook is troubled by as well, is that this doesn't

20   seem to me to be information that is like highly

21   confidential.  If you're going to have a new employee come on

22   board and say, Okay, this is the policy, this is what we

23   require before we will consider a loan modification

24   application, it doesn't seem particularly secret to me.

25           MS. BAUCUS:  If you're talking about a very narrow

1    list of we require these documents, you know, that list is

2    quite frankly going to be on the letter sent out saying this

3    is what we need.

4              THE COURT:  You say that, but he wants to make sure

5    that you're accurate.

6              MS. BAUCUS:  But an entire policy saying this is

7    how, you know, sometimes -- I'm not representing this policy

8    in general, but this is how you talk and this is what you say

9    and, you know, check this box or that box or this box, that is

10   how Nationstar operates.  It generated that.  It paid money to

11   do that.  You know, this is how the company operates.  It's

12   confidential, proprietary information.  It's systems.  That's

13   how it conducts its business.

14             You know, having to turn over an entire policy

15   that's, you know, again not relevant, doesn't have any basis,

16   especially in light of the Court of Appeals saying policies

17   aren't relevant to the violation of the law.  I mean, policies

18   aren't relevant.  It is what it is.

19             THE COURT:  Right.  But what about his point that if

20   you have a -- if you have a Fair Debt Collection Practices Act

21   claim and they're saying we need A, B, and C and really your

22   policy says we only need A and B, why is that not relevant?

23             MS. BAUCUS:  Two things.  A, again, fishing

24   expedition/wild goose chase.  The law we cited shows every

25   communication with regard to a loan is not debt collection.

1    So clearly a communication that says, you know, you want a

2    loan modification, this is what we need, that's not debt

3    collection.  They make it --

4              THE COURT:  Now you're asking me to decide the

5    substantive law in the context of a discovery dispute.

6              MS. BAUCUS:  Well, I appreciate that except that

7    when we get to the third motion to compel, we're working in

8    good faith.  You know, thousands -- hundreds of hours, and I

9    wish I was exaggerating, trying to dig through, you know,

10   clarify your claims.  What is it you want exactly?  There's

11   got to be a line where --

12             THE COURT:  He's been asking for these policies from

13   the very beginning because I remember it.

14             MS. BAUCUS:  Yes.  Three times we explained why

15   they're not relevant and the Court of Appeals' decision has

16   not changed, and if there was a clear FDCPA right to it, it

17   would have been in his briefs, but there isn't.  Our law

18   hasn't changed.  Our position has not changed.

19             THE COURT:  No, I understand that.

20             MS. BAUCUS:  And, you know, there's got to be a

21   point somewhere where the fishing expedition stops so we can

22   get to the meat of this.

23             THE COURT:  Well, I already told you there's no

24   extension on the pre-conference motion, and you've already

25   filed your pre-conference motion request, I think.

```
 1              MS. BAUCUS:  Yes, we have.

 2              THE COURT:  That's not changing.

 3         So I'm going to stick to what I said originally, Mr.

 4    Westbrook.  I understand your point, but I think it's a bit

 5    fanciful.

 6              MR. WESTBROOK:  One more clarification if I could,

 7    Your Honor?

 8              THE COURT:  Yes.

 9              MR. WESTBROOK:  Not on that issue.  I understand

10    your ruling.

11              THE COURT:  Okay.

12              MR. WESTBROOK:  What about the issue of the

13    privilege log?  I haven't seen any privilege log referring to

14    LPS documents, foreclosures, any of that stuff.

15              THE COURT:  Well, they say there is one, and part of

16    my problem in these discovery disputes is he said-she said.

17    So if you want to have a discussion with Ms. Lintemuth about

18    that, she told me very clearly as an officer of the Court that

19    those things are on the privilege log, and if you want to

20    refine your motion and challenge the privilege log, but I

21    suggest that you need to meet and confer with her first.

22              MR. WESTBROOK:  Your Honor, just to clarify, what

23    Ms. Lintemuth said and what I don't disagree with whatsoever,

24    and I'm not questioning her integrity in any sense, but what

25    she said is there's a privilege log that refers to redactions
```

1    that were made on the LSAMS notes that were prepared.  That is

2    true.  There is no privilege log that relates to withheld

3    documents at all, including any of the actual LPS system

4    documents or Remedy or anything else.  Any document that was

5    withheld, not produced at all, whether redacted or not,

6    there's no privilege log relating to these things, and I don't

7    think Ms. Lintemuth would disagree with me on that.

8         THE COURT:  Is that correct, Ms. Lintemuth?

9         MS. LINTEMUTH:  There's -- I don't think we've ever

10   claimed attorney-client privilege for Remedy.

11        THE COURT:  No, I'm not talking about Remedy.  I'm

12   talking now about --

13        MS. LINTEMUTH:  But LPS, so LPS is one system and

14   then LSAMS is the main document that compiles all the systems

15   together.

16        THE COURT:  Right.

17        MS. LINTEMUTH:  We produced the LSAMS notes, and

18   they have LPS -- we have LPS entries in the LSAMS notes that I

19   redacted --

20        THE COURT:  Right.

21        MS. LINTEMUTH:  -- and produced a privilege log

22   with.  I don't believe they specifically asked for the LPS

23   notes until now, but there may be something in LPS that's not

24   in LSAMS, and to that extent I guess I haven't produced a

25   privilege log for that.  Pardon?  Because they never asked for

 1   it, yeah.

 2            THE COURT:  Okay.  Well, I'm going to stick with my

 3   remedy.  I'm not going to order that they -- it seems to me

 4   they've already produced in the LSAMS what is relevant to

 5   these two loans and have claimed privilege for redacted

 6   material.

 7            MR. WESTBROOK:  Your Honor, they've withheld

 8   documents, and I think they've said that they've withheld

 9   documents --

10            THE COURT:  Well --

11            MR. WESTBROOK:  -- on the basis of privilege, but

12   not produced a privilege log.  This document that they now say

13   is privileged doesn't show up on a privilege log, and neither

14   does anything else that they've withheld, and that's part of

15   the relief that we're requesting through our motion.

16            THE COURT:  Okay.  But maybe I don't really

17   understand what the LPS system -- how it works because I'm

18   imagining that this is a system that covers maybe 500 loans.

19            MR. WESTBROOK:  It probably does, Your Honor.  And I

20   tried to find out more about how the LPS system works and how

21   Nationstar uses it, and when I asked the questions about what

22   kind of factual information it contains, I know it contains

23   this document, Exhibit 7 to our motion, but I don't know what

24   other documents it contains because when I asked about it, I

25   got instructions to the witness not to answer.

1    THE COURT:  Well, what I'm going to do, then, is

2  order you to prepare a privilege log for those documents that

3  are on the LPS system that have not been identified in your

4  privilege log for the LSAM system that had been withheld on

5  the basis of the privilege.

6    MS. LINTEMUTH:  Okay.  Thank you, Your Honor.

7    THE COURT:  All right.  And -- okay.  I'm going to

8  also -- no, I'm going to dictate the order myself.  I don't

9  want to get another motion that you can't agree on the form of

10  the order.

11    All right.  So what kind of time do you think you

12  need to get that done, Ms. Lintemuth?

13    MS. LINTEMUTH:  Candidly, Your Honor, I'm not sure

14  with the Remedy system.  I know that there's no easy way to

15  print it and that we are going to have to be working with IT

16  people, and it may be one of those things where we have to go

17  through the laborious process of taking a screen shot of every

18  possible screen that you could access in Remedy.

19    THE COURT:  Okay.

20    MS. LINTEMUTH:  So I don't know how long that would

21  take.  I honestly don't.  I've never looked through the Remedy

22  system myself.  I don't have access to it.

23    THE COURT:  Has your pre-motion conference date been

24  set for the --

25    MS. LINTEMUTH:  It's in July, Your Honor.

1         THE COURT:  Okay.  How about if I give you a month?

2         MS. LINTEMUTH:  July 8, I believe.

3         THE COURT:  Thirty days?

4         MS. LINTEMUTH:  We can do 30 days, yes.

5         THE COURT:  And Mr. Westbrook, how long do you need,

6    15 days to modify your interrogatory request?

7         MR. WESTBROOK:  I think that would be sufficient,

8    Your Honor.

9         THE COURT:  And I'm not sure this LPS issue -- as I

10   understand it, you're saying you produced the LSAMS report.

11   You've produced a privilege log for the redacted materials.

12   If I'm limiting the LPS simply to -- okay.  I'm going to just

13   say any documents from LPS for which a privilege is being

14   claimed, there should be a privilege log within 30 days.

15        All right.  Okay.  I'll dictate the order.  I hope I

16   wasn't too cranky with you today.  I don't like it when things

17   revisit me.  It's hard enough to make the decision once.

18        All right.  Good day to all of you.

19        MS. BAUCUS:  Thank you for your time, Your Honor.

20           (Proceedings concluded at 11:49 a.m.)

21

22

23

24

25

CERTIFICATE OF REPORTER

I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript was prepared by me.


/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503